FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHWESTERN DIVISION

04 APR 28   AM 8: 42

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| RONALD HUGH GASTON, on behalf of Himself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CV 04-J-0326-NW |
| GOLD KIST FOODS, INC., et al., | ) ) | |
| Defendants. | ) | |

**ENTERED**

APR 2 8 2004

## <u>MEMORANDUM OPINION</u>

Currently pending before the court are: (1) defendant Gold Kist, Inc.'s ("Gold Kist") motion to compel arbitration and dismiss plaintiff's claims or, in the alternative, to stay proceedings (doc. 3); (2) Gold Kist's motion for an extension of time to answer or otherwise respond to complaint pending the court's ruling on its motion to compel arbitration and dismiss plaintiff's claims or, in the alternative, stay proceedings (doc. 4); (3) defendant ConAgra Foods, Inc.'s ("ConAgra") motion to dismiss, or for alternative relief (doc. 7); (4) defendants Tyson Foods, Inc. and Tyson Chicken, Inc.'s (collectively "Tyson") motion to dismiss or, in the alternative, to stay (doc. 9); (5) defendant Perdue Farms, Inc.'s ("Perdue Farms") motion to dismiss

1

41

amended complaint or, in the alternative, to stay proceedings pending outcome of arbitration (doc. 10); (6) defendant Pilgrims Pride Corporation of Delaware, Inc.'s ("Pilgrims Pride") motion to dismiss plaintiff's amended complaint and, alternatively, motion to stay (doc. 13); (7) plaintiff's motion requesting leave to amend his class action complaint (doc. 34); (8) plaintiff's motion requesting leave to supplement his memorandum in opposition to defendant Gold Kist's motion to compel arbitration and dismiss plaintiff's claims or, in the alternative, stay proceedings (doc. 36); (9) plaintiff's motion to allow filing of plaintiff's supplemental submission in opposition to defendant Gold Kist's motion to compel arbitration (doc. 38); and (10) Gold Kist's opposition to plaintiff's motion to allow filing of supplemental submission or, in the alternative, motion to strike (doc. 40).

Most of these motions were further considered by the court at its April 21, 2004 hearing at which time all parties were present by and through counsel and the court heard oral argument on said motions. Having considered said motions and argument, the court is of the opinion that: (1) Gold Kist's motion to compel arbitration (doc. 3) is due to be **granted**; (2) Gold Kist's motion for an extension of time to answer or otherwise respond to complaint (doc. 4) is **moot**; (3) ConAgra's motion to dismiss (doc. 7) is due to be **denied** and ConAgra's motion to stay (doc. 7) is due to be **granted**; (4) Tyson's motion to dismiss (doc. 9) is due to be **denied** and Tyson's

motion to stay (doc. 9) is due to be **granted**; (5) Perdue Farms' motion to dismiss (doc. 10) is due to be **denied** and Perdue Farms' motion to stay (doc. 10) is due to be **granted**; (6) Pilgrims Pride's motion to dismiss (doc. 13) is due to be **denied** and Pilgrims Pride's motion to stay (doc. 13) is due to be **granted**; (7) plaintiff's motion requesting leave to amend his class action complaint (doc. 34) is due to be **granted**; (8) plaintiff's  motion requesting leave to supplement his response in opposition to Gold Kist's motion (doc. 36) is due to be **granted**; (9) plaintiff's motion for leave to file supplemental submission in opposition to Gold Kist's motion to compel arbitration (doc. 38) is due to be **granted**; and (10) Gold Kist's motion to strike plaintiff's supplemental submission (doc. 40) is due to be **denied**.

## I. Background

On September 8, 1997, plaintiff Ronald Hugh Gaston ("Gaston") entered into two contracts with Gold Kist: (1) a Membership, Marketing, and/or Purchasing Agreement (the "Gaston Membership Agreement"), pursuant to which he became a member of the Gold Kist cooperative; and (2) a Servicing Agreement for hatching egg flocks (the "Gaston Production Agreement"), pursuant to which he agreed to act as a farmer for Gold Kist hatching egg flocks. (Gaston Membership Agreement, Ex. A1 to Gold Kist's brief (doc. 5); Gaston Production Agreement, Ex. A4 to Gold Kist's brief (doc. 5).)  These agreements contain the following language addressing

3

arbitration:

> Gold Kist and Producer will submit to binding arbitration all disputes between the parties, whether governed by federal, state, or international contract law, tort law, statute, or treaty, and irrespective of the form of relief sought, relating to or arising out of matters of a type declared by Gold Kist's Board of Directors before the dispute arises to be of a type covered by Gold Kist's arbitration policy. This obligation to arbitrate shall survive any termination of membership with respect to matters arising out of or relating to events or actions before such termination. All such arbitrations shall be according to rules and procedures adopted from time to time by Gold Kist's Board of Directors.

(Gaston Membership Agreement, Ex. A1 to Gold Kist's brief (doc. 5), ¶ 9.)

> Disputes subject to the Gold Kist Arbitration Policy will be resolved as set forth therein.

(Gaston Production Agreement, Ex. A4 to Gold Kist's brief (doc. 5), ¶ 4.6.) Gold Kist's Articles of Incorporation and By-Laws set forth the following arbitration policy:

> Gold Kist and members will submit to binding arbitration all disputes between the parties, whether governed by federal, state, or international contract law, tort law, statute, or treaty, and irrespective of the form of relief sought, relating to or arising out of matters of a type declared by Gold Kist's Board of Directors before the dispute arises to be of a type covered by Gold Kist's arbitration policy. All such arbitrations shall be according to rules and procedures adopted from time to time by Gold Kist's Board of Directors.

(Ex. A2 to Gold Kist's brief (doc. 5), Section 7(a).) The Gold Kist Inc. Arbitration Policy states:

> The Board of Directors hereby declares that the following matters shall be subject to arbitration under this policy:
> All disputes of fact or law between Gold Kist and members arising

4

during the period of a member's membership, even if resolution of the dispute is attempted after termination of the member's membership, and even if the facts or events alleged in the dispute arose or existed prior to the disputing party's becoming a member.  This arbitration policy is intended to cover all types of disputes to the maximum extent permissible by law in effect at the time a dispute arises, whether the dispute arises under federal or state statutes or common law, except that this arbitration policy shall not include, nor shall it permit any arbitrator to decide, disputes relating to matters in the discretion of management or the Board of Directors, disputes concerning what matters fall within the discretion of management or the Board of Directors, nor patronage or corporate power or governance matters since they could involve questions affecting the membership as a whole.  Neither shall it apply to any purchases or sales between Gold Kist and members, or contracts for such purchases or sales, if the transactions were completed or the contracts executed prior to the effective date [January 1, 1994] of this policy.

(Ex. A5 to Gold Kist's brief (doc. 5)).

In the second amended complaint, plaintiffs[1] assert the following causes of action: (1) unconscionability of contracts seeking reformation of contracts; (2) unfair practices by defendants in violation of the Packers and Stockyards Act ("PSA"), 7 U.S.C. § 192(a); (3) manipulation of prices by defendants in violation of the PSA, 7 U.S.C. § 192(e); and (4) conspiracy in violation of the PSA, 7 U.S.C. §§ 192(a) and (e).

---

[1]    Plaintiffs' second amended class action complaint names an additional plaintiff, Matthew Burnett ("Burnett").  Such addition does not affect the court's analysis of whether plaintiffs' claims against Gold Kist are subject to arbitration because plaintiffs do not dispute that Burnett has entered into contracts with Gold Kist in which he agreed to the same arbitration policy as agreed to by Gaston.

5

## II. Analysis

Gold Kist argues that, pursuant to the arbitration policy agreed to by plaintiffs when they became members of the cooperative, plaintiffs must arbitrate their disputes against Gold Kist. The court agrees.

Plaintiffs first argue that their claims against Gold Kist are expressly excepted from the arbitration agreement pursuant to the following language: "except that this arbitration policy shall not include, nor shall it permit any arbitrator to decide, disputes relating to matters in the discretion of management or the Board of Directors ... since they could involve questions affecting the membership as a whole." (Ex. A5 to Gold Kist's brief (doc. 5).)[2] The Eleventh Circuit, in an unpublished opinion, has interpreted the exception contained in Gold Kist's arbitration policy previously and held that such exception does not encompass allegations of violations of the PSA. *Beatty v. Gold Kist, Inc.*, No. 00-11439 (11th Cir. Jan. 8, 2001) (attached as Ex. C to Gold Kist's brief (doc. 5).)  The Eleventh Circuit first noted that "the arbitration policy is broad, unambiguously stating that it encompasses all disputes of fact or law, whereas the exception of claims relating to matters in the discretion of management is ambiguous and does not clearly except [plaintiffs'] claims." *Id.*, slip op. at 6.  The

---

[2] The court notes that plaintiffs do not dispute that they agreed to Gold Kist's arbitration policy.

Court further reasoned that "because almost any claim against Gold Kist could be said to be based in some part on management discretion, and the [plaintiffs'] interpretation of the exception would therefore swallow up the arbitration clause, we find this interpretation [plaintiffs'] to be inconsistent with the presumption in favor of arbitration." *Id.* Applying the reasoning of the Eleventh Circuit, plaintiff's first argument fails.

Next, plaintiff argues that the arbitration agreement is unconscionable and, thus, unenforceable. The plaintiffs' argument relies on the Supreme Court of Alabama's holding in *Leonard v. Terminix Int'l Co., LP*, 854 So. 2d 529 (Ala. 2003). For this argument to succeed, plaintiff must show: (1) "an absence of meaningful choice on one party's part;" (2) that "the contractual terms are unreasonably favorable to one party;" (3) that "there was unequal bargaining power among the parties;" and (4) that "there were oppressive, one-sided or patently unfair terms in the contract." *Pitchford v. AmSouth Bank*, 285 F. Supp. 2d 1286, 1294-95 (M.D. Ala. 2003) (quoting *Mason v. Acceptance Loan Co., Inc.*, 850 So. 2d 289, 301 n.7 (Ala. 2002)). As the court in *Pitchford v. AmSouth Bank*, 285 F. Supp. 2d 1286 (M.D. Ala. 2003), found the facts of that case distinguishable from those in *Leonard v. Terminix Int'l Co., LP*, so are the facts presented in this action distinguishable.

Plaintiffs argue that their contracts with Gold Kist are contracts of adhesion

because they were given no meaningful alternative. However, there is no evidence

that plaintiffs "shopped around" before agreeing to Gold Kist's arbitration policy.[3]

*See Pitchford*, 285 F. Supp. 2d at 1295 ("The Plaintiffs failed to show that they

'shopped around,' thus under Alabama law, they cannot demonstrate that they were

left without a meaningful alternative."). Moreover, Gold Kist is a farmers'

cooperative of which plaintiffs are farmer members. *See* Dyson Declaration at ¶¶ 3-4.

As farmer members, plaintiffs have an ownership interest in the organization, vote for

the Board of Directors, and share in the cooperative's profits through patronage

dividends and the allocation of notified equity. *See id*. at ¶ 4.

Plaintiffs also argue that the contract terms are patently unfair in that the

arbitration policy precludes class-wide adjudication. Plaintiffs assert that the

preclusion of class-wide adjudication is patently unfair because "[n]o case involving

a single plaintiff and a single defendant could correct the market-wide abuses alleged

in the Complaint." (Plaintiff's Supplement, attached to doc. 36, at 3.) However, the

preclusion of class-wide adjudication does not necessarily render a contract patently

unfair. *See Pitchford*, 285 F. Supp. 2d at 1291-92. "[S]o long as the prospective

---

[3]     The court notes that plaintiffs submitted an affidavit in which Gaston testifies that he knew he could not contract with any poultry company other than Gold Kist. (Gaston Aff. at ¶ 2.) However, Gaston does not testify as to the basis for such knowledge or that he made any effort to shop around.

litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S. Ct. 1647 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985)).  Unlike the plaintiffs in *Leonard v. Terminix Int'l Co., LP*, 854 So. 2d 529 (Ala. 2003), plaintiffs here have not shown that they cannot effectively vindicate their statutory causes of action in the arbitral forum.[4]  Thus, plaintiffs' second argument against arbitration also fails.

The remaining defendants have all moved to dismiss plaintiffs' claims against them or, in the alternative, to stay any proceedings against them until the resolution of arbitration.  Taking plaintiffs' allegations as true, the court finds that defendants' motions to dismiss are due to be denied.  However, because plaintiffs' conspiracy claim alleges that Gold Kist participated in the conspiracy and such claim is subject to arbitration, the court finds that defendants' motions to stay are due to be granted.

### III. Conclusion

Based upon the foregoing, Gold Kist's motion to compel arbitration (doc. 3) is **GRANTED**; defendants ConAgra, Tyson, Perdue Farms and Pilgrims Pride's

---

[4]     The court also notes that the PSA provides for enforcement by the Secretary as well.

motions to dismiss (docs. 7, 9, 10, 13) are **DENIED**; defendants ConAgra, Tyson, Perdue Farms and Pilgrims Pride's motions to stay (docs. 7, 9, 10, 13) are **GRANTED**; Gold Kist's motion for an extension of time to answer or otherwise respond to complaint (doc. 4) is **MOOT**; plaintiff's motions requesting leave to amend his class action complaint, requesting leave to supplement his response in opposition to Gold Kist's motion, and requesting leave to file supplemental submission in opposition to Gold Kist's motion to compel arbitration (docs. 34, 36, 38) are **GRANTED**; and, Gold Kist's motion to strike plaintiff's supplemental submission (doc. 40) is **DENIED**.  The case will be stayed pending completion of arbitration between plaintiffs and Gold Kist by a separate order.

      **DONE** and **ORDERED** this ___27___ day of April, 2004.


                            _____
                            Inge P. Johnson
                            United States District Judge